UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, And ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No: 4:14CV1730 HEA ) |
| GREAT AMERICAN INSUANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiffs Federal Insurance Company, [Doc. No. 64], and Zurich American Insurance Company, [Doc. No. 63] and Defendant/ Counterclaim Plaintiff Great American Insurance Company, [Doc. No.'s 67, 69 and 71]. For the reasons stated below, Plaintiffs' motions will be granted and Great American's motions will be denied.

**Facts and Background**

This is an action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of determining the obligations and priority of coverage for commercial general liability Policy No. CPO 6552614-00 (the Zurich Policy)

issued by Defendant Zurich to Yarco Company, Inc. ("Yarco") ; commercial excess and umbrella insurance Policy No. 7985-91-48 (the Federal Policy) issued by Plaintiff Federal to Yarco ; commercial general liability Policy No. ESG0033185 (the Indian Harbor Policy) issued by Indian Harbor to Municipal Mortgage & Equity, LLC ("MM&E") for the benefit of Whispering Lake; and umbrella insurance Policy No. UM 2386960 (the Great American Policy) issued by Defendant Great American to Distinguished Properties Umbrella Managers, Inc. ("Distinguished Properties") for the benefit of Whispering Lake arising out of the shooting death of a child by Aaron Sullivan.

The Federal Policy limits are $25,000,000.00 per occurrence. The Great American Policy limits are $10,000,000.00 per occurrence. The Zurich Policy limits are $1,000,000.00 per occurrence. The Indian Harbor Policy limits are $1,000,000.00 per occurrence.

On May 1, 2007,Yarco and Whispering Lake entered into a Management Agreement for a term of one (1) year, which was automatically renewed for successive additional terms of (1) year each. Whispering Lake (Owner) and Yarco (Managing Agent) entered into a Management Agreement that included an Indemnity clause and provided in part, as follows:

> 10. Indemnity
> (a) Except for fraud, willful misconduct or gross negligence on the part of the Managing Agent, the Owner shall hold and save the Managing

> Agent (and Managing Agent's directors, officers, employees, shareholders, partners and affiliates) free and harmless from any claim, cause, proceeding, or suit arising out of, or in connection with any actions by the Managing Agent in accordance with this Agreement or acting under the express or implied direction of the Owner. Subject to the same exceptions, the Owner shall reimburse the Managing Agent, upon demand, for all costs and expenses (including reasonable attorney's fees) and for any monies which the Managing Agent is required to pay in connection therewith or shall, if requested in writing by Managing Agent, defend promptly and diligently, at the sole expense of the Owner, any claim, action or proceeding against the Managing Agent which arises out of, or in connection with, the foregoing. . .
>
> Insurance
>
> (a) The Owner will inform the Managing Agent as to the types and amounts of insurance to be carried with respect to the Development and its operation, and the Owner will cause such insurance to placed and kept in effect at all times. The Managing Agent shall pay insurance premiums out of the Project Operating Account, and all insurance premiums will be treated as a Development expense….

Yarco maintained the Indian Harbor Policy as a CGL and the Great American Policy as an Excess Policy ("Whispering Lakes Insurance Line"). Yarco also maintained the Zurich policy as a CGL and the Federal Policy as an Excess Policy ("Yarco Insurance Line").

Michele DeMoss, mother of the B. L. ("Decedent") sued Aaron Sullivan in a lawsuit styled Michelle DeMoss v. Aaron Sullivan, Case No. 1116-CV31736 in the Circuit Court of Jackson County, Missouri (the "Underlying Litigation or Underlying Lawsuit"). A Second Amended Petition for Damages was filed on

April 2, 2014. 21. In the Second Amended Petition, DeMoss alleged that on July 4, 2011, Aaron Sullivan was a pool monitor employed by Yarco at Whispering Lake. It further alleges that Sullivan and some friends fired shots from the apartment complex across a lake into a wooded area. It was alleged that one of these shots struck Decedent, an 11-year old child, resulting in her death.

DeMoss brought claims, among others, against Yarco and Sullivan for Negligence, Negligent failure to supervise and/or provide appropriate security, Negligent hiring of a pool monitor and her own claim for emotional distress.

During the course of the case, a dispute arose among Federal, Indian Harbor, Zurich and Great American over the amount of each carrier's obligation and the order in which each insurance policy was triggered by virtue of both the terms of the Management Agreement and the language of the insurance policies.

A global settlement in the underlying litigation was reached on May 13, 2014, for confidential terms of settlement. The settlement was approved by the Circuit Court of Jackson County, Missouri on June 9, 2014. Indian Harbor, Zurich, Great American and Federal were present for settlement negotiations and final settlement. However, due to the various coverage opinions, it was agreed there was a question of priority of coverage, which was set aside for the purpose of resolving the case. Indian Harbor, Zurich, Great American and Federal contributed

to a settlement. The settlement proceeds were paid on June 25, 2014. Releases in favor of Whispering Lake, Yarco and Sullivan were executed.

Plaintiff seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 determining and declaring as follows: (a) The Indemnity clause within the Management Agreement is an "Insured Contract" under the Great American Policy; (b) The Whispering Lake Insurance Line (Indian Harbor Policy and Great American Policy) must be exhausted before the Yarco Insurance Line applies as a result of the Indemnity Clause within the Management Agreement; (c) Yarco and its insurers, Zurich and Federal, are entitled to reimbursement for all amounts they contributed settlement.

Plaintiff seeks summary judgment on Count I of its declaratory judgment action based on the indemnity provision of the Management Agreement between Yarco and Whispering Lakes. If applicable, Plaintiff argues that the Whispering Lake line of insurance must be exhausted before the Yarco line of insurance must pay. In opposition, Great American argues that the "gross negligence" exception contained in the indemnity clause applies in this instance, and therefore, the indemnity requirement is not triggered.

## Summary Judgment Standard

The Standard for Summary Judgment is well settled. Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party,

[5]

demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.,* 445 F.3d 1106, 1109 (8th Cir.2006) (quoting *Bockelman v. MCI Worldcom, Inc.,* 403 F.3d 528, 531 (8th Cir.2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)). A "genuine" dispute of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "If the evidence is merely colorable ... or is

not significantly probative ... summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## Discussion

This action was brought pursuant to the Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332, accordingly, Missouri State Law applies to the substantive issues. *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir.2001) (A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state.). When the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court. *Southeast Bakery Feeds v. Ranger Ins. Co.,* 974 S.W.2d 635, 638 (Mo.App.1998). In addition, summary judgment may properly resolve claims interpreting a contractual indemnification provision. *Nusbaum v. City of Kansas City,* 100 S.W.3d 101, 105 (Mo. banc 2003). *Fed. Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 164 (Mo. Ct. App. 2005).

In deciding whether losses suffered are covered by a liability policy under Missouri law, "courts look to the allegations in the underlying complaint and compare them to the language in the insurance policy. *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 791 (8th Cir.1996)." *Stein v. State Farm Fire & Cas. Co.*, 120 F.3d 909, 910 (8th Cir. 1997); *Berry v. American States Ins. Co.*, 563 S.W.2d 514 (Mo. App. 1978). "The duty to indemnify is determined by the

facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 173 (Mo. 1999).

At issue is whether the Great American is required to contribute its policy limits prior to Zurich and Federal contributing to the settlement.[1]

The Management Agreement clearly sets out that Whispering Lake agreed to indemnify **Yarco and its employees** for any claims, cause, proceedings, or suit arising out of, or in connection with any actions taken in accordance with the Agreement. Ergo, if Sullivan was acting on behalf of Yarco, Whispering Lake is required to indemnify both Sullivan and Yarco.

In the Second Amended Petition, DeMoss alleged that Sullivan was acting in the course and scope of his employment and agency for Yarco; that Yarco was performing its work as a real estate manager pursuant to a contract; and that Yarco was acting as Whispering Lake's real estate manager.

Under the Great American Policy, an insured includes "[a]ny person…or any organization while acting as your real estate manager." In the underlying litigation, the Second Amended Petition alleged that both Yarco and Sullivan were acting as Whispering Lake's "real estate manager" at the of the accidental shooting

---

[1] The Indian Harbor Policy is not at issue since Indian Harbor contributed its policy limits to the settlement

of the Decedent. There is no dispute that the Second Amended Petition details the allegations claiming both Sullivan and Yarco were acting as Whispering Lake's real estate manager. Ergo, under the policy, both Sullivan and Yarco are insured.

DeMoss' Second Amended Petition unequivocally alleges Yarco and Sullivan were acting as Whispering Lake's real estate manager and acting on behalf of Whispering Lake.

Great American attempts to avoid the applicability of the indemnity provision of the Management Agreement. Great American argues that Sullivan was "grossly negligent" and therefore the indemnification is excused. Great American's characterization of Sullivan's actions however cannot provide the basis for the Court's determination. Great American asks the Court to go beyond the underlying case pleadings and find, because of the manner and result of Sullivan's actions, that he was "grossly negligent." Great American provides no support in this record, other than its opinion that Sullivan was "grossly negligent," for this conclusion. Great American does argue that because Sullivan pled guilty to manslaughter in the first degree, his actions were grossly negligent. This argument however is based on opinion and supposition. In contravention, Plaintiffs point out that Sullivan testified that he was actually trying to *avoid* injuries by shooting into the lake.

Additionally, Great American's attempt to argue that its contribution to the settlement was only for Yarco, evidenced by the small amount of the contribution, is belied by the fact that there was no apportionment whatsoever in the settlement itself. Great American at no time attempted to limit its contribution solely with regard to Yarco and not Sullivan. See *Harold S. Schwartz & Assoc., Inc. v Contl. Cas. Co.*, 705 S.

The Second Amended Petition alleges negligence, negligent supervision and failing to provide adequate security, negligent hiring of Sullivan. It also sets out allegations that Sullivan was acting on behalf of Yarco at all times during the events giving rise to the tragic death of B.L. in working as "real estate manager" for Whispering Lake.

## Conclusion

Considering all of the allegations contained in the Second Amended Petition, the global settlement and the relevant policies and indemnity provision contained in the Management Agreement, it is clear that Great American is obligated to provide coverage for Yarco and Sullivan. Indian Harbor contributed its policy limit, therefore, Great American, the excess carrier in the Whispering Lake line is required to exhaust its limits before the Zurich and Federal policies become triggered for contribution. The Great American policy would not have reached its limit with the settlement. Because both Federal and Zurich contributed to the

settlement before the exhaustion of the Great American policy, both are entitled to reimbursement. Federal and Zurich are entitled therefore to summary judgment on Count I. The remaining grounds for summary judgment are accordingly moot. Great American's Motions for Summary Judgment is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Motions for Summary Judgment filed by Federal Insurance Company, [Doc. No. 64], and Zurich American Insurance Company, [Doc. No. 63], are **GRANTED**.

**IT IS FURTHER ORDERED** that Great American's Motions for Summary Judgment, [Doc. No.'s 67, 69 and 71] are **DENIED**.

**IT IS FURTHER ORDERED** that (a) The Indemnity clause within the Management Agreement is an "Insured Contract" under the Great American Policy; (b) The Whispering Lake Insurance Line (Indian Harbor Policy and Great American Policy) must be exhausted before the Yarco Insurance Line applies as a result of the Indemnity Clause within the Management Agreement; (c) Yarco and its insurers, Zurich and Federal, are entitled to reimbursement for all amounts they contributed settlement.

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 30th day of September, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE